IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CINCHONA MILES, et al., <br>     Plaintiffs, | ) <br> ) <br> ) |
| v. | )     No. 1:11cv135 <br> ) |
| RUBY TUESDAY, INC., <br>     Defendant. | ) <br> ) <br> ) |

## MEMORANDUM OPINION

The question this case now presents—whether to seal the terms of the parties' Fair Labor Standards Act [1] ("FLSA") claims—requires weighing and then striking the appropriate balance between the well-established public right of access to court proceedings and the parties' interest in a settlement sealed from public scrutiny.

For the reasons that follow, the parties' joint request for their settlement to remain under seal must be denied.

I.

Plaintiffs are seven current or former employees of the Ruby Tuesday restaurant located at 210 Swamp Fox Road in Alexandria, Virginia. Plaintiffs brought this action against defendant Ruby Tuesday's, Inc., a Georgia corporation that owns and operates Ruby Tuesday restaurants across the country, including the restaurant in issue here. Plaintiffs, formerly employed servers at the same Northern Virginia Ruby Tuesday, filed this action on behalf of themselves and all others similarly-situated employees.[2] Pursuant to the parties' proposed settlement agreement,

---

[1] 29 U.S.C. §§ 201 *et seq.*

[2] *See* 29 U.S.C. § 216(b) (authorizing FLSA actions "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated"). Plaintiffs originally

plaintiffs would settle their individual claims and drop their assertion of claims on behalf of similarly-situated employees.

The factual allegations may be succinctly stated. Plaintiffs' complaint alleges that they were regularly denied by management their proper regular and overtime wages in violation of the FLSA. Specifically, they allege that restaurant management (i) did not allow them to clock in for work and receive pay until diners arrived at the restaurant, even though the employees would be present and preparing for service for approximately two hours earlier; (ii) required them to perform work for several hours beyond the end of their shifts, but retroactively adjusted the time clock back to their scheduled leave time; and (iii) would not allow them to use their personal time clock cards when working overtime, thereby preventing them from being paid for such work. Based on these allegations, plaintiffs brought FLSA and common law *quantum meruit* claims against defendant seeking, *inter alia*, damages and attorney's fees. Defendant answered the complaint and denied the claims.

On May 25, 2011, shortly after commencing discovery, the parties indicated they had reached a settlement. Because any settlement of FLSA claims must be judicially approved,[3] the parties jointly moved for approval of their settlement and simultaneously requested that the terms

---

claimed to bring their action on behalf of:

> All present and former non-exempt hourly employees of the Defendant employed since March 1, 2010, . . . at 210 Swamp Fox Road, Alexandria, VA 22314, as a server, bartender, cook, or in an otherwise similar position as to Plaintiffs who were caused to sustain damages when they were not paid the regular time and overtime wages equal to one and one-half times their regular compensation rate that were legally due and owed to them from and by Defendant.

Compl. at ¶ 59.

[3] *See Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007); *Belcher v. CHA Companies, Inc.*, 2011 U.S. Dist. LEXIS 39063 (E.D. Va. Mar. 16, 2011); *Lomascolo v. Parsons*

of their settlement remain under seal. The parties were then granted leave to file their settlement under seal temporarily solely for the purpose of judicial review of the two issues presented, namely whether the settlement terms should be approved and whether the settlement terms should be allowed to remain under seal. *See Miles v. Ruby Tuesday, Inc.*, No. 1:11cv135 (E.D. Va. June 10, 2011) (Order). The parties then filed their settlement agreement and memoranda in support of their joint motion to approve the settlement and to have the settlement remain under seal permanently.

## II.

The parties have indicated that their settlement is conditioned on the settlement terms remaining under seal. It is appropriate therefore to consider first whether the parties' settlement terms may remain under seal before addressing whether the settlement merits judicial approval.

Few principles have as long a pedigree and are as well-settled as the public's right of access to court proceedings and judicial documents. With strong roots in the common law and the First Amendment, this principle is central to the legitimacy and independence of the judiciary.[4] *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (recognizing a right of access in criminal cases under the First Amendment and common law); *In re Knight Pub. Co.*, 743 F.2d 231, 233 (4th Cir. 1984) (same); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (extending the First Amendment and common law right of access to civil cases). While this right is not absolute, courts have uniformly emphasized that sealing

---

*Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89129 (E.D. Va. Sept. 28, 2009).

[4] *See* T. S. Ellis, III, *Systematic Justice: Sealing, Judicial Transparency, and Judicial Independence*, 53 Vill. L. Rev. 939, 940 (2008) (discussing the important relationship between public access to judicial proceeds, *i.e.*, judicial transparency, and judicial independence).

should be the relatively rare exception, not the common practice.[5] *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988) (sealing is reserved only for "unusual" cases).

In analyzing this important question, the procedural steps for sealing must be considered first. Given the important policy underpinnings of the common law right of access, courts in the Fourth Circuit and elsewhere have prescribed specific guidelines to be followed in resolving a sealing request.[6] Assuming the documents are "judicial records" to which the right of access applies,[7] before a court may order the sealing of any court records, it must (i) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object; (ii) consider less drastic alternatives to sealing the documents; and (iii) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. *Ashcraft*, 218 F.3d at 302. In resolving a sealing request, a court must balance several factors, including (i) whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; (ii) whether release would enhance the public's understanding of an important historical event; and (iii) whether the public has already had access to the information contained in the records. *Id.*; *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-608 (1978) (discussing these factors). And importantly, even where, as here, all of the litigants support the motion to seal, and even where a public hearing on the

---

[5] *See* Joseph F. Anderson, Jr., *Hidden from the Public by Order of the Court: The Case Against Government-Enforced Secrecy*, 55 S.C.L. Rev. 711, 712 (2004) (discussing the "discernable and troubling trend in civil litigation" of sealing settlement terms by court order).

[6] Ellis, 53 Vill. L. Rev. at 945 & n.27 (collecting cases from various circuits on procedures for sealing).

[7] Not all court filings are "judicial documents" subject to the right of access. *In re Policy Mgmt. Sys. Corp.*, 1995 U.S. App. LEXIS 25900, at *9-10 (4th Cir. Sept. 13, 1995). In this case, there is no question that the settlement documents are "judicial documents" because they "adjudicate[]

4

question does not bring forth anyone to assert the right of access, a court must still engage in a careful deliberation on the issue. *See P&G v. Bankers Trust Co.*, 78 F.3d 219, 222, 225 (6th Cir. 1996) (parties may not be allowed to determine on their own whether documents merit sealing). It is these principles that govern the sealing question in this case.

The procedural requirements for sealing have been satisfied here. A notice issued for a public hearing on the sealing of the settlement documents, and a hearing was held. No members of the press or the general public appeared to support or object to the sealing request. The parties appeared, by counsel, and consistent with their previously filed memoranda, argued that sealing is appropriate for two reasons: (i) first, because the public has no meaningful or substantial interest in knowing the specific terms; and (ii) second, because denying sealing may hinder settlement inasmuch as confidentiality is a material term of the settlement here.

Although the parties agree that the common law right of access applies here, they do not address whether the First Amendment right of access also applies to the settlement agreement in issue. The Fourth Circuit has made clear that the "test for determining whether a first amendment right of access is available" rests on two questions: (i) "whether the place and process have historically been open to the press and general public"; and (ii) "whether public access plays a significant positive role in the functioning of the particular process in question." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-10 (1986)). Additionally, in *Rushford*, the Fourth Circuit held that the First Amendment right of access, which already applied to civil trials, must also extend to summary judgment filings given that a summary judgment is a similarly dispositive resolution of the parties' claims. *Rushford*, 846 F.2d at 253. In this regard, judicial approval of a settlement is

---

substantive rights and serve[] as a substitute for a trial." *Id.*; *Rushford*, 846 F.2d at 253.

akin to a summary judgment decision inasmuch as both decisions result in a final resolution of the claims in issue. Although there is no controlling circuit authority, the *Baltimore Sun* factors and the *Rushford* decision suggest that the First Amendment right of access is applicable. Yet, in these end it is not necessary to rely on the First Amendment right of access here because the parties' have not established a basis to overcome the common law right of access.

The first step in addressing the common law right of access is recognizing the presumption of public access to judicial records, which an only be rebutted if countervailing interests heavily outweigh the public's interest in access. *Rushford*, 846 F.2d at 253; *see also Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000); *Knight*, 743 F.2d at 235. In this regard, neither of the parties' arguments for overcoming the presumption of public access is persuasive. As to the parties' first contention—that the public has no meaningful interest in the settlement—this argument misapprehends the public's interest in access to FLSA settlement approval decisions. As the Fourth Circuit has noted, the reason judicial approval is required for FLSA settlements is to ensure that a settlement of an FLSA claim does not undermine the statute's terms or purposes. *See Taylor*, 493 F.3d at 460 (noting that "there is a judicial prohibition against the unsupervised waiver or settlement of claims" under the FLSA); *see also Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (recognizing that waivers of FLSA rights would nullify the legislative goal of nationwide minimum employment standards). For example, minimum wage laws would be substantially undermined if employees could simply waive their rights to the minimum wage or enter into settlement agreements that effectively vitiated their minimum wage rights. *See id.* ("Any wage settlement that gave the employee less than the statutory minimum would frustrate Congress's objective of imposing uniform minimum pay requirements."). This logic applies with equal force to overtime

6

provisions of the FLSA, which set forth specific rules regarding employees' rights to additional pay when working more than forty hours per week. *See* 29 U.S.C. § 207(a)(1) (entitling employees working longer than forty hours per week to "a rate not less than one and one-half times" their regular hourly wage).

Although judicial approval of FLSA settlements is an important step in ensuring that the statute's terms and purposes are not frustrated by private agreements, the public's right of access to judicial records regarding such approval adds an additional, important safeguard in this respect. If a court's review of a settlement is sealed, Congress and the public lose the ability to assess whether the settlement is consistent with the statute's terms and purposes. Without the right of access to court decisions approving FLSA settlements, the Act could be undermined without the knowledge of those in the best position to demand or enact corrective policies— namely the public and legislators. And while it is true that the public's interest in judicial documents is greater when the case itself is already one of great public attention,[8] the right of access still must be protected even where the case at hand does not appear to be one in which the public has already expressed interest. This is so because the mere fact of judicial transparency, by itself, enhances judicial accountability. Additionally, it is worth noting that while an individual court's decision to approve a settlement between an employee and an employer regarding FLSA violations may not excite the interest of the public at large,[9] aggregating this information with records from other courts' FLSA settlement approval decisions might well

---

[8] *Cf. Nixon*, 435 U.S. at 597-608 (recognizing that the right of access is heavily favored where such access would enhance public understanding of an important historical event).

[9] Of course, were the parties settling claims on behalf of similarly situated employees, which they are not, that fact would weigh heavily against sealing. Nevertheless, the parties' decision to settle their claims individually, while relevant to the sealing analysis, does not tip the scales in

7

disclose significant information concerning FLSA enforcement nationwide.[10] Thus, public access to judicial records can be an important factor in evaluating and determining public policy.

Of course, the public cannot meaningfully review a court's decision to approve a settlement if the public does not have access to the terms of the settlement itself. Therefore, contrary to the parties' contentions, the public does have a substantial interest in ensuring the right of access to the details of the parties' settlement, including the amounts paid in damages or penalties and attorneys' fees.[11]

The parties' second contention—that denying sealing may hinder settlement because confidentiality is a material term in their settlement—while relevant, cannot trump or outweigh the strong interest in public access to court proceedings. It is true, of course, that "[p]ublic policy . . . favors private settlement of disputes. *Crandell v. United States*, 703 F.2d 74, 75 (4th Cir. 1983). But to argue that the benefits of sealing a settlement outweigh the public's interest in open access could allow the exception to swallow the rule. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) (interest in confidential settlements does not outweigh the interest in public access where the settlements are subject to judicial approval). To seal a settlement because the parties deem privacy material to their agreement could easily convert the exception to the commonplace, as all settlements would then

---

favor of sealing.

[10] Additionally, it is worth noting that inasmuch as FLSA judicial decisions provide a basis for members of the public to be informed about their FLSA rights, publishing such decisions provides additional public benefit that weighs in favor of sealing.

[11] For this reason, the middle-ground approach discussed during the parties' hearing on the instant motion—namely issuing an order approving the settlement that outlines the parties' agreement without disclosing the monetary figures—is not appropriate here. Such an order would not enable the public to evaluate the merits of the approval decision because the settlement terms and amounts would not be disclosed.

be sealed if any party insisted on it as a condition of settlement. Moreover, as the parties here admit, it is defendant, and not plaintiffs, that prefers the settlement to be sealed out of concern that public knowledge of the settlement terms might inspire frivolous FLSA lawsuits. As an initial matter, avoidance of frivolous lawsuits, while an important goal, cannot override the public's interest in accessing judicial records; to conclude otherwise would be trade one important judicial safeguard—the transparency and accountability of judges—for another—the prevention of frivolous lawsuits. But more importantly, allowing employees to thwart public review of FLSA settlement decisions may be just as detrimental to the FLSA as allowing employees to waive their FLSA minimum wage or overtime rights. In other words, given the benefits of transparency in FLSA enforcement, courts should not abandon transparency simply because the parties are willing to do so. This, of course, is the central premise of judicial approval in FLSA settlements: employers and employees, left to their own devices, may enter into private agreements that undermine the FLSA. As a consequence, courts must step in to ensure public policy does not suffer even where the parties seem eager to eschew certain procedural or substantive rights under the FLSA in their particular situation.

Finally, although the parties sincerely assert that sealing is a material term of their settlement, this does not alter the balance in favor of sealing. If sealing is denied, the parties have a choice: they may either proceed to consummate their settlement, which will be filed in the public record, or they may withdraw their settlement agreement and proceed to trial, which of course will be open to the public. Given that both paths allow public scrutiny, the parties gain little by incurring the expense of proceeding to trial when a settlement is apparently so close at hand. In other words, while it is always preferable for the parties to settle their disputes out of

court, it is not likely that the denial of sealing will transform this case from one in which the parties settle quickly and amicably to one in which the parties engage in protracted litigation.[12]

In sum, because public policy requires judicial approval of FLSA settlements, and because public policy strongly favors judicial transparency, the parties' generalized interest in sealed or secret settlement cannot, without more, overcome the strong presumption of public access to judicial records in this case. Because the parties have established no particularized need for sealing beyond the general desire, common to nearly all settlements, for a sealed or secret resolution, it is appropriate to deny the parities' request to approve their settlement under seal.

### III.

A review of the parties' proposed settlement agreement suggests it merits judicial approval. Yet, it would be premature to proceed with the settlement given that the parties may choose to withdraw their settlement and proceed to trial in light of the denial of their sealing request. Accordingly the parties are directed to file an appropriate pleading indicating whether they wish to proceed to consummate the settlement, notwithstanding the denial of the sealing request, or whether any party wishes to withdraw the agreement and proceed to trial.[13] If no

---

[12] Plaintiffs also note that settlement has the added benefit of providing them immediate monetary relief that would otherwise by delayed, and perhaps lost, by proceeding to trial. In this regard, they stress that although the amounts in issue, which stem from overtime wages for seven servers, are relatively modest, they are nonetheless understandably and justifiably important to plaintiffs, and delaying relief, plaintiffs point out, is a further hardship they wish to avoid. While this is an appropriate factor to consider in the sealing analysis, it does not alter the result reached here, namely that the public interest in accessing judicial records outweighs the parties' interests in sealing their settlement agreement.

[13] Should any of the parties wish to appeal this decision, the parties' agreement will remain under seal pending disposition of the appeal.

party requests withdrawal of the settlement agreement within seven days, an order will issue removing the seal and approving the settlement.

An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
July 20, 2011

/s/
_____
T. S. Ellis, III
United States District Judge

11